**JOHN LABATT LIMITED, Labatt Brewing Company Limited, Labatt's USA, Inc., and Labatt Importers, Inc., Plaintiffs,**

v.

**MOLSON BREWERIES, Molson Breweries U.S.A. Inc., Miller Brewing Co., Martlet Importing Co., and Molson Breweries of Canada, Ltd., Defendants.**

Nos. 93–CV–75004–DT, 94–CV–71540–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 29, 1995.

Michael W. Hartmann, Miller, Canfield, Paddock & Stone, Detroit, MI.

Byron L. Gregory, Michelle C. Burke, McDermott, Will & Emery, Chicago, IL.

Norman C. Ankers, Honigman, Miller, Schwartz & Cohn, Detroit, MI.

Ira J. Levy, Ethan Horwitz, Darby & Darby, New York City.

John A. Krsul Jr., Cynthia M. York, Dickinson, Wright, Moon, Vandusen & Freeman, Detroit, MI.

## MEMORANDUM OPINION AND ORDER ON ATTORNEY–CLIENT PRIVILEGE AND FOREIGN PATENT AND TRADEMARK AGENTS

STEVEN D. PEPE, United States Magistrate Judge.

### A. Procedural Background:

This is a patent and trademark case brought by John Labatt Limited, Labatt Brewing Company Limited, Labatt's USA, Inc., and Labatt Importers, Inc. ("Labatt") against Molson Breweries, Molson Breweries U.S.A. Inc., Miller Brewing Co., Martlet Importing Co., and Molson Breweries of Canada, Ltd. ("Miller") over the manufacture and marketing of "Ice" beer. The Miller defendants have moved to compel production of certain documents, to which the Labatt plaintiffs have asserted protections under the attorney-client privilege and the work product doctrine. An *in-camera* inspection was ordered for certain documents. With respect to 15 of the 46 disputed items on the plain-

tiffs' log involving Bernard Beasley, plaintiff Labatt sought to make supplemental submissions concerning his status and Labatt's claim of privilege. Mr. Beasley is a member of the legal department of John Labatt Ltd., and serves as their Intellectual Property Officer. Although not an attorney, Mr. Beasley is registered as a patent agent before the U.S. Patent and Trademark Office ("USPTO"). The 15 documents for which the Labatt plaintiffs are asserting attorney-client privilege were initiated by or received by Mr. Beasley. Plaintiffs were given until March 8, 1995, to submit further affidavit evidence in support of a claim of attorney-client privilege on these 15 documents.

On March 7, 1995, an affidavit of Mr. Beasley was provided to this Court, as well as portions of a trial transcript in *Anheuser–Busch v. John Labatt Ltd.*, 93–CV–2516–GFG, 1995 WL 421432 (E.D.Mo.), in which attorney Larry Innanen was testifying about his role in Labatt Breweries of Canada and his relationship to Bernard Beasley. Mr. Innanen described Mr. Beasley as a patent and trademark agent on his staff and under his supervision. The two work in different cities. Counsel for Labatt also faxed to the Court portions of the *Anheuser–Busch v. John Labatt Ltd.* case in which District Judge George Gunn, without explanation or obvious foundation in the transcript, sustained an objection concerning Mr. Beasley on the basis of attorney-client privilege.

Plaintiffs have had suitable opportunity to supplement the record on this issue, and this determination is being made on the record before the Court.

**B. Background Law on the Attorney–Client Privilege:**

**1. THE GENERAL RULE**

 Attorney-client privilege protects communications between an attorney and a client made in confidence and for the purpose of obtaining or facilitating the rendition of professional legal service. These can include communications between a client or a client's representative and a lawyer or the lawyer's representative as long as the other conditions for attorney-client privilege are fulfilled.

The burden of establishing the existence of the privilege rests with the person asserting it.

In *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir.1983), the Sixth Circuit noted:

[Because] the attorney-client privilege may serve as a mechanism to frustrate the investigative or fact-finding process, it creates an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process. *See: In re Grand Jury Proceedings (Jones)*, 517 F.2d 666, 671–72 (5th Cir.1975) ("the purpose of the privilege—to suppress truth—runs counter to the dominant aims of law").... These competing societal interests demand that application of the privilege not exceed that which is necessary to effect the policy considerations underlying the privilege, i.e., "the privilege must be upheld only in those circumstances for which it was created." *In re Walsh, supra*, 623 F.2d [489 (7th Cir.)] at 492, [*cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980)]. *Accord: Fisher [v. United States]*, 425 U.S. [391 (1975)] at 403, 96 S.Ct. [1569] at 1577 [48 L.Ed.2d 39] ("it applies only where necessary to achieve its purpose.") As a derogation of the search for truth, the privilege is to be narrowly construed. [Citations omitted.]

*Id.* at 451.

 The job of the court is to attempt to "strike a balance between the privilege's goal of promoting freedom of consultation and full disclosure between an attorney and a seeker of legal advice, and the law's need for relevant evidence." 2 WEINSTEIN, EVIDENCE, ¶ 503(b)(4), at 503–44 (1975).

**2. EXTENSION OF ATTORNEY-CLIENT PRIVILEGE TO NON-LAWYER PATENT AND TRADEMARK AGENTS**

While attorney-client privilege was historically not extended to non-lawyers who undertook legal work, an exception developed in a line of cases following the careful analysis of Judge Charles Richey in *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 377 (D.D.C. 1978). That case allowed attorney-client privilege to be applied to a non-lawyer regis-

tered *patent agent* regarding communications relating to patent activities in a specific country if that country accorded a privilege to such communications. Judge Richey in this opinion determined that where a foreign individual was admitted as a registered patent agent with the United States Patent Office, communications of that individual relating to patent activities in the United States would be protected by attorney-client privilege. Communications of that patent agent with respect to activities in another country would, however, be protected only if that other country granted such a privilege. 81 F.R.D. at 391. Judge Richey notes that the American rule is not derived by statute, as for instance in Great Britain, but by common law. He acknowledged that there is a split in the case law with the earlier trend not according attorney-client privilege to patent agents. *Id.* at 392. Relying on the reasoning of *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), Judge Richey ultimately concluded that privilege should be extended for specified patent activities to non-lawyer patent agents who are registered with the Patent Office.

The United States Supreme Court held in *Sperry* that because Congress authorized the Commissioner of Patents to recognize non-lawyer agents to practice before the Patent Office, Florida's rules against unauthorized practice of law could not preclude such a non-lawyer, registered as a patent agent at the patent office, from giving patent advice, preparing patent applications, and performing other patent services. Extending the reasoning of *Sperry,* Judge Richey concluded that a court should also accord attorney-client privilege to communications between such a patent agent and his or her client in order to fulfill the congressional intent of allowing clients to choose freely between a patent attorney and a registered patent agent for representation in patent proceedings. Judge Richey noted that such a freedom of selection would be substantially impaired if communications with patent agents were not afforded the same attorney-client protections as communications with a patent attorney. "As a result, in order not to frustrate this congressional scheme, the attorney-client privilege must be available to communications of registered patent agents." *In*

*re Ampicillin,* 81 F.R.D. at 393. The court specifically limited it to *registered* patent agents. Also by implication and subsequent case law it is limited to those communications necessary for the patent agent to provide patent services and prepare patent applications. The court stated:

> Therefore, where a client, in confidence, seeks legal advice from a registered patent agent who is authorized to represent that client in an adversary process that will substantially affect the legal rights of the client, which thereby necessitates a full and free disclosure from the client to the legal representative so that the representation may be effective, the privilege will be available.

*Id.* at 394. The court also limited the scope of the communication by stating: "[T]he communication to the patent agent must involve a response that requires knowledge, analysis, or application of patent law to particular information." *Id.*

Labatt claims privilege exists for Mr. Beasley's communications if the following requirements are met: (1) the [intellectual property] officer is licensed to practice before the United States Patent and Trademark Office, (2) the advice relates to U.S. intellectual property law, and (3) the officer is assisting or acting on behalf of an attorney. Plaintiff letter, dated 2/10/95, at 3. In actuality, part (3) is an independent justification in certain situations for extending attorney-client privilege if Mr. Beasley was simply a conduit, or communicative agent, between Labatt counsel and Labatt employees. This is not relevant to the issue in this opinion on whether Mr. Beasley's discussions with Labatt employees are independently privileged due to his status as a patent agent. Whether Beasley's communications qualify for attorney-client privilege protection under plaintiffs' argument (3) is analyzed in my other memorandum opinion on the specific documents examined in-camera.

*C. Even if Beasley Was Properly Registered to Practice Before the USPTO, Communications Subsequent to the Issuance of the Trademark are not Covered by Attorney–Client Privilege:*

■ In their assertions (1) and (2) Labatt has expanded the scope of the privilege be-

tween patent agent and clients beyond what case authority or sound policy support. The farthest a privilege for a non-lawyer patent agent has been extended is to advice sought in confidence from a patent agent authorized to represent the client in an adversary process that will substantially effect the legal rights of the client—i.e. in the patent application process. *In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 394 (D.D.C.1978). No case provides blanket attorney-client privilege between a USPTO recognized non-lawyer patent agent and his client over *all* intellectual property matters, as Labatt seeks. *See, e.g., Foseco International Limited v. Fireline, Inc.,* 546 F.Supp. 22 (N.D.Ohio 1982); *Advanced Cardiovascular Systems v. C.R. Bard, Inc.,* 144 F.R.D. 372 (N.D.Cal. 1992); *Glaxo, Inc. v. Novopharm Ltd.,* 148 F.R.D. 535 (E.D.N.C.1993).

■ The Labatt assertions also understate the requirements for the creation of an attorney-client privilege for a non-lawyer. A patent agent's claim to attorney-client privilege has its foundation in the USPTO's limited authorization to non-lawyer patent agents to practice law. *See Sperry,* 373 U.S. at 384–85, 83 S.Ct. at 1325–26 (USPO registered agent authorized to practice patent law before the patent office due to congressional intent); *In re Ampicillin,* 81 F.R.D. at 391 (communications with USPO registered agent relating to U.S. patent activities may be privileged); 35 U.S.C. §§ 31–33 (1994). Essentially, the authorization[1] provides the individual with the status of an attorney but only for a limited purpose, i.e. the purpose for which the USPTO registered the non-attorney as an agent to practice before it. *See* 37 C.F.R. § 10.6(c) ("Any foreigner ... may be registered as a patent agent to practice before the Office for the limited purpose of presenting and prosecuting patent applications of applicants located in such country...."). Thus, by definition, communications between a patent agent and a client beyond that "limited purpose"

are not privileged. Therefore, a patent agent's discussions with a client after the patent issued concerning the patent having been infringed or its legal validity if challenged in court are not privileged communications. USPTO registered patent agents cannot defend or enforce patent rights in federal courts.

In the present case, the Beasley communications for which Labatt is claiming privilege did not occur until after the trademarks in question were issued. (Plaintiff letter dated 4/6/95, at 3.) Assuming that Mr. Beasley could be entitled to privileged communications with Labatt employees if Beasley had sought the trademarks, that privilege ended for most communications after the trademarks were issued. Hence Mr. Beasley's status does not protect documents from disclosure that reflect communications regarding the trademark after the trademark issued.

*D. Beasley's Status as a USPTO Registered Patent Agent Does Not Authorize him to Practice U.S. Trademark Law. Nor Does His Potential Eligibility to Become a U.S. Trademark Agent:*

■ There is a separate regulation for USPTO recognition of a non-attorney as a trademark agent from the procedure for registering as a patent agent. 37 C.F.R. § 10.14. In trademark matters, the recognition of foreign agents exists only for a specific application. 37 C.F.R. § 10.14(c) (1994); (Defendant letter dated 3/31/95, declaration of Ethan Horwitz). There is no USPTO permanent registry for trademark agents as there is for patent agents. In effect the scope of the USPTO recognition defines the scope of the attorney-client privilege. Since the USPTO only recognizes trademark agents for a particular case, an attorney-client privilege will exist only for that particular trademark application.[2]

---

1. Obviously this authorization requirement is in addition to the other standard attorney client privilege requirements.

2. Labatt erroneously cites *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y.1988), for the proposition that all intellectual property advice given by a patent agent is privileged. *Cuno*

addressed, among other things, whether advice given by a patent agent was business or legal in nature. It did not address the scope of a patent agent attorney-client privilege other than to acknowledge that a USPTO recognized patent agent acting under the control of counsel may create an attorney-client privilege. *Id.* at 204.

■■ Mr. Beasley has never registered before the USPTO as a trademark agent. Labatt had attorneys in the District of Columbia pursue the trademark involved in this litigation. Labatt cites no case supporting the proposition that a client may claim attorney-client privilege for a USPTO recognized trademark agent. Yet, Congress has authorized the USPTO to devise a procedure to place foreign trademark agents on equal footing with attorneys in the pursuit of a trademark before the USPTO. 37 C.F.R. § 10.14(c). Thus, the reasoning underlying *Ampicillin* in the patent area exists for trademarks as well. Because the congressionally approved scheme of registration gives rise to an attorney-client privilege in the patent area, then an analogous scheme with trademarks should permit a privilege for qualified trademark agents and clients. *See, e.g., In re Ampicillin Antitrust Litigation,* 81 F.R.D. 377, 391 (D.D.C.1978). Thus, even in the absence of a trademark agent case directly on point, I am confident that where Congress allows non-attorneys to practice law before federal agencies, a commensurate attorney-client privilege arises over communications with clients necessary to practice in the areas authorized.

Yet here, intellectual property officer Beasley, a USPTO recognized *patent* agent, advised his client on *trademark* issues. Because Mr. Beasley is not authorized to practice trademark law, no attorney-client privilege on trademark issues arises from Mr. Beasley's patent agent status.

Labatt contends that Mr. Beasley is "able to prosecute trademarks before the USPTO...." (Affidavit of Bernard Beasley of 3/7/95, at 2.) Yet, there is no case authority that uses mere potential competence as the standard for attorney-client privilege. Nor should there be such authority. All cases cited by both parties require that the USPTO has in fact registered the agent. Because Mr. Beasley has not followed the procedures designed by Congress and the USPTO to allow a non-lawyer to represent Labatt in trademark matters before the USPTO, Mr. Beasley is not entitled to attorney-client privilege in his communications with Labatt non-lawyer employees.

Moreover, even if the USPTO did authorize Mr. Beasley to prosecute or present a trademark issue before it, the only matters that could be privileged are the matters relating to that issue. The limited attorney-client privilege that flows from *Sperry* does not blossom into privilege for *all* intellectual property discussions as Labatt suggests. Because the trademark matter is no longer before the USPTO Mr. Beasley is not authorized to render legal advice concerning the trademark application. Thus, any conceivable justification for attorney-client privilege derived from the USPTO has now passed.

Labatt cites *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1445 (D.Del.1989), which acknowledged that a patent agent who is also an employee of an attorney may create an attorney client privilege with clients. Yet, the scope of the privilege was limited to the extent that the legal advisor was legally authorized to provide advice to clients. *Id.* at 1444–47. For foreign trademark agents this legal authority stems from USPTO recognition. *See* 37 C.F.R. § 10.14(c)(d) (1994).

The USPTO has not recognized Mr. Beasley concerning trademark issues. Thus, Mr. Beasley has no USPTO authority to advise clients concerning American trademark matters. Therefore, no attorney-client privilege arises notwithstanding Mr. Beasley's status as a recognized *patent* agent.

■ Plaintiffs suggest that since they utilized Mr. Beasley as their intellectual property officer he has attorney status for attorney-client privilege. (Plaintiff letter of 4/6/95, at 3.) This contention is offered without authority. Attorney-client privilege exists, with few exceptions, only between an attorney and a client. While, as noted above, several courts have extended this relationship to patent agents based upon imputed congressional intent and 37 C.F.R. § 10.6(b) and (c), it is the recognition by Congress and the USPTO, and not the agent's job description, that determines whether or not a privilege may exist.

### E. Mr. Beasley Was Not Simply an Attorney's Conduit to the Corporate Client Labatt:

■ Labatt alternatively contends that Mr. Beasley's underlying status and relation

to Labatt counsel makes the documents at issue privileged. Employees of attorneys may give or receive privileged information without waiving the privilege. *Apollo Computer,* 707 F.Supp. at 1445. Agents of attorneys may do the same. *Foseco International Limited v. Fireline, Inc.,* 546 F.Supp. 22, 25 (N.D.Ohio 1982). The theory rests on the principle that a non-attorney acting merely as a conduit to counsel is not himself providing legal advice.

■ Implicit in this principle is an element of control over the agent by the attorney. *Cuno, Inc. v. Pall Corp.,* 121 F.R.D. 198, 204 (E.D.N.Y.1988). If the non-attorney is merely a functionary of the attorney then the client is not intending to disclose privileged information to third parties. Thus the client has not waived his privilege.

■ The burden of proving the existence of a privilege rests upon the party claiming the privilege. *Golden Trade, S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514 (S.D.N.Y. 1992) (quoting *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship)). Additionally the proponent must offer more than conclusory statements. *See id.; Western Trails, Inc., v. Camp Coast to Coast, Inc.,* 139 F.R.D. 4, 11 (D.D.C.1991). Based upon an *in-camera* inspection of Labatt documents (with specific findings set out in a separate opinion), I find that on most documents Labatt has failed to carry its burden of demonstrating that Mr. Beasley was a conduit to other Labatt attorneys regarding legal advice.[3]

On the issue addressed in this opinion, plaintiffs have failed to demonstrate that communications with their Intellectual Property Officer are entitled to attorney-client privilege because of his being a registered U.S. Patent Agent or because of his eligibility to be a U.S. Trademark Agent.

**3.** Labatt Ltd. may use Mr. Beasley for his own legal opinions. Yet, doing so does not create an

Defendants' motions for costs in relation to this and its other discovery motions will be ruled on in a separate memorandum opinion and order.

So Ordered.

attorney-client privilege for the communications.